## SUPREME COURT.

### ABEL HART agt. ABEL HART, JR.

The plaintiff alleged a breach of covenant as follows:—" The said defendant did covenant and agree to and with the said plaintiff and his representatives, among other things, to maintain the said plaintiff through life, and to find and provide him with good and respectable clothing, and proper and reasonable board and lodging, looking after and providing for all his wants in sickness and in health, to procure and pay for all necessary and proper medical aid and attendance for him; *and if at any time said plaintiff should become dissatisfied with living with said defendant, then the said defendant did covenant and agree to pay all reasonable charges for the board and necessary expenses of the said plaintiff.*"

The principal question was, whether, under this covenant, the plaintiff could, at his pleasure, *elect* to become dissatisfied with living with the defendant? The referees held, that it was not necessary for the plaintiff to show cause, or any excuse, for becoming dissatisfied with living with the defendant.

On appeal from the judgment entered for the plaintiff, upon the report of the referees,

*Held*, that this covenant was not intended to authorize the plaintiff to leave the defendant, without some reason or provocation for so doing.

The testimony in this case very fully showed that the defendant, in regard to this covenant, performed his whole duty.

It is a settled rule of law that, in determining the meaning of a contract, the subject matter and situation of the parties, as well as their intentions, should be considered.

It could not be believed that the parties here intended to, or understood that the plaintiff might at any time, of his own volition, without any cause whatever, quit the defendant's house and go elsewhere to live, and then call on the defendant to pay the cash for the board and expenses of the plaintiff.

It appeared that when the plaintiff left the defendant's house, to reside elsewhere, the defendant forbid his going, and refused to pay any expenses for board, &c., for the plaintiff, as he left without any provocation.

*Held*, that this was not sufficient to sustain the allegation in the complaint of a request and refusal on the part of the defendant.

The provisions of the contract were such that a *total* breach could not take place, even during the lifetime of the plaintiff,—there being certain things to be done by the defendant after the plaintiff's death,—yet the referees decided, as matter of law, that there was a total breach.

*Sixth District, General Term, July*, 1853.

THIS action was commenced by the service of a summons and complaint, on the 23d day of July, 1852: the answer of

the defendant was served on the 12th day of August, 1852, and a reply thereto was duly served.

The plaintiff, in his complaint, claimed to recover damages of the defendant for the breach of a covenant, whereby the defendant was to maintain the said plaintiff through life, and to find and provide him with good and respectable clothing, and proper and reasonable board and lodging—looking after and providing for all his wants, in sickness and in health, and to procure and pay for necessary and proper medical aid and attendance; and if at any time said plaintiff should become dissatisfied with living with said defendant, then the said defendant should pay all reasonable charges for the board and necessary expenses of said plaintiff, and demanded judgment for $5,000.

The defendant, in his answer, denied the allegations contained in the complaint; and also claimed that the plaintiff was largely indebted to him for work and labor done for the plaintiff, for personal property sold and delivered to him by the defendant, and for money had and received to the use of the defendant, and demanded judgment against the plaintiff for the sum of $1,800.

The plaintiff, in reply, denied the allegations in the answer; also set up the statute of limitations in bar of any claim the defendant should prove; and also payment.

The cause being thus at issue, it was referred to Thomas Farrington, Caleb B. Drake and Charles R. Barstow, Esquires, referees, and came on for trial before the referees on the 8th of December, 1852; and, on the 9th, the referees reported that they found in favor of the plaintiff the sum of $873.28; and, on the 15th of December, 1852, judgment was entered upon the report for that sum, together with $95.67 costs; and, on the 17th day of January, 1853, a case, with leave to turn the same into a bill of exceptions, proposed by the counsel for the defendant, was settled and annexed to the judgment-roll; and, on the 18th day of February, notices of appeal and undertaking were duly served.

GEO. SYDNEY CAMP, *for plaintiff.*
DAVIS & WARNER, *for defendant.*

By the court—CRIPPEN, Justice.   The complaint in this ac-tion charges the defendant with the breach of covenants, by which he had bound himself to maintain the plaintiff during his natural life; to furnish him with clothing, board, &c., and to look after and provide for all the plaintiff's wants in sickness and in health.

The defendant denied the complaint, and also set up matters by way of defence upon the merits.

The action was referred to three referees to hear and decide, who, after hearing the proofs and allegations of the parties, made a report in favor of the plaintiff, and assessed his dam-ages at $873.28.   The report sets forth that the referees find, as matter of fact, that the covenants or agreement, although dated on the 9th day of March, 1849, was not, in fact, executed or delivered until the 22d day of December thereafter, on which day the said agreement took effect between the parties.   The referees also find, as matter of fact, that the defendant had broken said agreement, as alleged in the complaint, by reason whereof the plaintiff had sustained damages to the amount of $875.90, from which sum was deducted $2.62, allowed to de-fendant by way of set-off, leaving the amount due to the plain-tiff as set forth in said report.

They also found, as matter of fact, that the sum of $76.70, parcel of said damages, accrued between the 10th day of Feb-ruary, 1852, and the 22d day of July next thereafter, at which time this action was commenced; and that the sum of $799.20, the residue of said damages, accrued subsequent to the com-mencement of said action.

The referees also find, as matter of law, that the covenant of the defendant is an entire contract; that the breach thereof is a total breach, and assess the damages for the entire period— assuming that the probable duration of the plaintiff's life is three years, he being at the time of the trial eighty-two years of age.

The first question which I propose to examine is, whether the proof established a breach of the covenants in said agree-ment on the part of the defendant?

It appeared, by the written contract produced in evidence on the trial, that the plaintiff conveyed, by lease, to his son, (the defendant,) for the period of twelve years, if the plaintiff should so long live, and if not, then during his lifetime, his home-farm, situate in the town of Candor, in the county of Tioga; also all his personal property, excepting some lumber, also the use of a horse and harness, and a single-horse wagon when the plaintiff should want it for his use, also a desk, a chest, and all his notes, book accounts, and money on hand. The plaintiff agreed that, at the termination of the twelve years, if he should so long live, he would renew said lease for the further term of twelve years, or during his life, in case he did not live to the end of the twelve years, and that he would continue to renew said lease, from time to time, at the end of each twelve years, as long as he might live. The plaintiff further agreed that, at his death, all his personal property, notes, accounts and demands, and money, should become and be the absolute property of the defendant.

The defendant, in consideration thereof, agreed, on his part, to pay to Abel H. Potter the sum of one hundred dollars on his arriving to the age of twenty-one years; also to pay to the plaintiff the yearly rent of $150, and to pay all the taxes to be assessed upon said property, and to maintain the plaintiff through life; to find and provide for him good and respectable clothing, proper and reasonable board and lodging, to look after and provide for all his wants in sickness and in health, to procure and pay for all necessary medicine and medical attendance, and erect suitable grave-stones at his grave. And if at any time the plaintiff should become dissatisfied of living with the said defendant, then the said defendant should pay all reasonable charges for the plaintiff's board and necessary expenses; and in case the yearly rents, or any part thereof, should not be paid, or if default should be made by the defendant in any of the covenants on his part, then the plaintiff should have the right to enter into and to take possession of the farm and personal property, and hold the same discharged from said agreement.

On the trial of the action the counsel admitted that the lease

was signed on the 22d day of December, 1849, although it bears date on the 9th day of March of that year. It was also admitted that the plaintiff left the defendant's house on the 10th day of February, 1852, and this action was commenced on the 22d day of July thereafter. It appeared that the plaintiff, when he left the defendant, went to reside with his son Daniel Hart. When he was leaving the defendant followed him to the sleigh, and said to him, " Father, I hear you are going to Daniel's to board, and are going to leave me."

The plaintiff replied, yes, he had left him, and should not live with him any more : he could not enjoy himself there, and should not stay.

The plaintiff gave no reason why he could not enjoy himself at the defendant's. The defendant said to the plaintiff that he forbid his going to Daniel's, for he should not pay his board there.

No proof was given that the defendant had ever been requested by the plaintiff, or by any other person, to pay his board or maintenance after he left the defendant's house on the 10th day of February, 1852.

A son-in-law of the plaintiff testified that he heard the defendant say, after the plaintiff left his house, he should not pay his board anywhere, because he was not obliged to do so; that the defendant had a home for the plaintiff, and that was the place for him ; he had provided the plaintiff with everything he wanted, and he had left without a cause for doing so.

It appeared in evidence that the plaintiff had a large comfortable room, which was prepared for his use, and which he occupied at the defendant's house. No other testimony was given or offered by the plaintiff tending to establish a breach of the contract on the part of the defendant. Not a single fact appears in the whole case, neither does it appear to have been pretended even, that the defendant, at any time or in any manner, had omitted or neglected to pay the rent and taxes, or to maintain the plaintiff, or provide him with good and suitable clothing, or to look after and provide for all his wants in sickness and in health, up to the day he left the defendant's house, according to the letter and spirit of said agreement.

Hart agt. Hart, jr.

It is insisted, however, by the plaintiff's counsel, that although the defendant may have in all things fulfilled the contract on his part, yet the plaintiff had a right at any time to become dissatisfied, or, in other words, to quit the defendant and go elsewhere to reside, and to be provided for, whenever he might elect to do so, without any cause or provocation, and thereby work out a breach of the contract by the defendant, and render him liable to pay the money for the board and maintenance of the plaintiff at such place as he might choose to live, without even requesting the defendant to pay for his board and necessary expenses; and that the plaintiff was entitled to recover damages for his support and maintenance during the remainder of his life, by estimating the probable length of time he would still live. To my mind, such a construction of the contract in question cannot be upheld. The parties never intended to, and in fact have not made such contract.

The complaint is drawn to meet a different case; it is there alleged that the defendant had not paid all the necessary and reasonable charges for the board and expenses of the plaintiff; that he had wholly and utterly refused to pay such board and expenses, although often requested to do so.

The plaintiff entirely failed of proving any demand or request of the defendant to pay for the board or the necessary expenses of the plaintiff. Subsequent to the 10th day of February, 1852, no such request was ever made; no account or demand therefor was presented to the defendant prior to the commencement of this action. The testimony given, showing that the defendant said, at the time the plaintiff was leaving his house, he would not pay his board at Daniel Hart's; and his afterwards remarking to Rosecrants, that he should not pay the plaintiff's board anywhere, because he left him without provocation, and that he had a home for him at his own house, is not sufficient to sustain the allegation in the complaint of a request and refusal on the part of the defendant.

Rosecrants had no authority from the plaintiff to request the defendant to pay for board, neither did he make any such request of the defendant. The refusal, to be available as a breach

of the agreement, should have been made to the plaintiff himself, or to some agent or other person authorized by him to call on the defendant. No legal request was ever made of the defendant to pay for the plaintiff's support after he left the defendant's house.

Before this action should be upheld against the defendant, the plaintiff must show a clear breach of duty on the part of the defendant, or some refusal to fulfil his covenants with the plaintiff. To make out such refusal the plaintiff should establish a request, by him, of the defendant to pay his expenses and board, and a neglect to comply therewith. The covenant of the defendant makes him liable to pay only reasonable charges for board and expenses. If the plaintiff had the right to elect to be dissatisfied, and to leave the defendant's house without any fault or omission of duty on his part, he should be furnished with the claim for board and expenses, with a request to pay the same, before action brought to recover the same. This is a case where the defendant should be placed clearly in the wrong before he is made liable to prosecution and the payment of damages.

But there is another answer to this action, which, in my opinion, is unanswerable. The clause in the contract which provides that the plaintiff may quit the defendant whenever he became dissatisfied, was not intended to authorize the plaintiff to leave there without some reason or provocation for so doing.

The intention and object of the agreement between the parties was to secure to the plaintiff everything necessary and proper to render him comfortable through life—that he should be properly cared for in his extreme old age. The testimony very fully shows that the defendant, in this respect, performed his whole duty: not an unkind word or expression was ever given by the defendant or any member of his family: not a want or a desire of the plaintiff was ever neglected or refused; but, on the contrary, for ought appearing in this case, every want, every desire of the plaintiff was attended to, and every care bestowed that kindness and duty as a child or the obligations of his contract could require.

Hart agt. Hart, jr.

It is a settled rule of law that, in determining the meaning of a contract, the subject matter and situation of the parties, as well as their intentions, should be considered. (*Beach* agt. *Crain*, 2 *Com.* 93.)

Applying this test to the contract or covenant of the defendant, on which he is sought to be made liable in this action, I cannot believe that the parties intended to, or understood that the plaintiff might at any time, of his own volition, without any cause whatever, quit the defendant's house, and go elsewhere to live, and then call on the defendant to pay the cash for the board and expenses of the plaintiff. The reasonable construction of the contract, and that intended by the parties, is, that they intended to secure to the plaintiff a suitable and proper support and maintenance at the defendant's residence and homestead of the plaintiff, that all his wants should be provided for and looked after, that he might receive such treatment and attention from the defendant and his family as his great age and consequent infirmities required.

The referees also erred in deciding that the defendant had been guilty of a total breach of said agreement, and therefore had rendered himself liable to the payment of prospective damages. The provisions of the contract are such that a total breach could not take place even during the lifetime of the plaintiff, and still the referees held, as matter of law, "that the defendant's covenant is an entire contract, and that the breach of the same is a total breach."

It is quite difficult to see how the covenant requiring the defendant to pay the funeral charges of the plaintiff, and to procure and erect suitable grave-stones at his grave, could be broken during his life, or until after his death. The parties could not have contemplated the performance of this part of defendant's contract while the plaintiff was living; and certainly there is nothing in the language of the agreement that will warrant such construction of it. A total breach, therefore, had not occurred, and the decision in this respect cannot be upheld.

The report, therefore, must be set aside, and the judgment reversed. A new trial is granted—costs to abide the event.